IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHARLES E. THORNTON, #Y-19115, | ) ) ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 17-cv-01296-NJR ) |
| JACQUELINE LASHBROOK, NEW, JOHN DOE, and MS. PRICE, | ) ) ) ) ) ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

This matter is now before the Court for preliminary review of the First Amended Complaint filed by Plaintiff Charles Thornton. (Doc. 7). Plaintiff is currently incarcerated at Menard Correctional Center ("Menard"). He brings this action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights at Menard. *Id*. In the First Amended Complaint, Plaintiff claims that he was wrongfully denied access to a single issue of "Phat Puffs" magazine and "Phat Puffs Shotz" photographs in June 2017. (Doc. 7, pp. 15-22). He names Jacqueline Lashbrook (warden), Mr./Ms. New (publication review officer), John Doe (unknown publication review officer), and Ms. Price (grievance counselor) in connection with a First Amendment claim. (Doc. 7, pp. 1-7). Plaintiff seeks declaratory judgment and monetary damages. (Doc. 7, p. 24). He also seeks a preliminary injunction.[1] (Doc. 8).

---

[1] On March 1, 2018, Plaintiff filed a Motion for Temporary Restraining Order ("TRO") and/or Preliminary Injunction, in which he requested an order requiring the prison to provide him with notice and an opportunity to appeal any adverse determination made by Menard's Publication Review Committee. (Doc. 8). The Court denied Plaintiff's request for a TRO and reserved its ruling on his request for a preliminary injunction. (Doc. 9).

1

This case is now before the Court for a preliminary review of the First Amended Complaint (Doc. 7) pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations in the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

**First Amended Complaint**

In the First Amended Complaint, Plaintiff alleges that a single issue of "Phat Puffs" magazine and "Phat Puffs Shotz" photographs were withheld from him in June 2017. (Doc. 7). On June 6, 2017, he authorized payment of $32.50 from his prison trust fund account to Sub Zero Entertainment, Inc., in order to purchase Issue No. 10 of "Phat Puffs" (Spring 2017) and "Phat Puffs Shotz." (Doc. 7, pp. 16-25). Plaintiff maintains that the "non-nude" magazine and

photographs were not obscene or violent in nature. (Doc. 7, pp. 15-17). His request for payment was approved. (Doc. 7, p. 17).

Menard's Publication Review Committee nevertheless notified Plaintiff that his request for the publication was denied. *Id*. The Committee was comprised of two program and/or security staff members who were appointed by Warden Lashbrook. (Doc. 7, p. 3). These individuals included Ms. New and John Doe. (Doc. 7, pp. 3-7). On June 30, 2017, the Committee notified Plaintiff that the publication was on the "disapproved list" because it contained images considered to be sexually explicit or obscene under 720 ILCS § 5/11-20(b).[2] *Id*. The Committee further explained that the publications posed a threat to the "security, good order, or discipline [in] its facilities." (Doc. 7, p. 18).

Plaintiff filed a grievance the same day. *Id*. In it, he challenged the Committee's determination. *Id*. He argued that the publication contained no sexually explicit materials and was not obscene. *Id*. In response, Plaintiff was directed to review the list of disapproved publications in the law library. (Doc. 7, p. 19).

When Plaintiff requested the list of disapproved publications in July 2017, he was given a copy of the 2016 list. (Doc. 7, pp. 19, 26-34). Plaintiff asked Counselor Price for an updated list on July 12 and 15, 2017. (Doc. 7, pp. 20, 26-34). She denied his request and directed him to review the list that was available at the law library. *Id*. Plaintiff submitted another grievance to

---

[2] Illinois law defines "obscene" as "[a]ny material or performance [that]: (1) the average person, applying contemporary adult community standards, would find that, taken as a whole, . . . appeals to the prurient interest; and (2) the average person, applying contemporary adult community standards, would find . . . depicts or describes, in a patently offensive way, ultimate sexual acts or sadomasochistic sexual acts, whether normal or perverted, actual or simulated, or masturbation, excretory functions or lewd exhibition of the genitals; and (3) taken as a whole, . . . lacks serious literary, artistic, political or scientific value." *See* 720 ILCS § 5/11-20.

inform Counselor Price that the law library's list was outdated, and she responded by stating that the prison's publication "policy is being followed." (Doc. 7, pp. 20-22).

Plaintiff maintains that the decision to deny his request for "Phat Puffs" and "Phat Puffs Shotz" in June 2017 was arbitrary. (Doc. 7, pp. 21-22, 26-34). According to the First Amended Complaint, the decision was not based on an updated list of disapproved items or an individualized determination that Issue No. 10 of "Phat Puffs" (Spring 2017) or the "Phat Puffs Shotz" photographs were sexually explicit or obscene under 720 ILCS § 5/11-20(b). *Id*. Plaintiff further alleges that the materials contained no obscene images, violent imagery, or gang-related information. *Id*. The denial of "Phat Puffs" and "Phat Puffs Shotz" thus infringed upon Plaintiff's rights under the First Amendment. *Id*.

## Merits Review Under 28 U.S.C. § 1915A

To facilitate the orderly management of future proceedings in this case, and in accordance with the objectives of Federal Rules of Civil Procedure 8(e) and 10(b), the Court has organized the claim in Plaintiff's *pro se* First Amended Complaint into a single count:

> **Count 1 -** First Amendment claim against Defendants for denying Plaintiff's request for a copy of Issue No. 10 of "Phat Puffs" (Spring 2017) and "Phat Puffs Shotz."

The parties and the Court will use this designation in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of this claim does not constitute an opinion regarding its merit. **Any claims not identified above but encompassed by the allegations in the First Amended Complaint are considered dismissed without prejudice from this action.**

4

**Discussion**

The freedom of speech under the First Amendment includes the freedom to speak and to read. *King v. Fed. Bureau of Prisons*, 415 F.3d 634, 638-39 (7th Cir. 2005) (citing *Stanley v. Georgia*, 394 U.S. 557, 564 (1969); *Lamont v. Postmaster General*, 381 U.S. 301, 306-07 (1965)). Although inmates do not lose these rights when they are incarcerated, prison officials may impose some restrictions on them. *Turner v. Safley*, 482 U.S. 78 (1987). Officials have "great latitude" in limiting a prisoner's reading materials. *Payton v. Cannon*, 806 F.3d 1109, 1110 (7th Cir. 2015) (quoting *Mays v. Springborn*, 575 F.3d 643, 649 (7th Cir. 2009)). Even so, they do not have unfettered discretion. *Payton*, 806 F.3d at 1110.

When "a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. at 89. However, "the arbitrary denial of access to published materials violates an inmate's first amendment rights." *Antonelli v. Sheahan*, 81 F.3d 1422, 1433 (7th Cir. 1996) (quoting *Martin v. Tyson*, 845 F.2d 1451, 1454 (7th Cir.) (per curiam), *cert. denied*, 488 U.S. 863 (1988)). The Supreme Court outlined four factors that courts must consider when evaluating whether a regulation that restricts inmates' rights is reasonably related to a legitimate penological interest sufficient to withstand constitutional scrutiny. *Turner*, 482 U.S. at 89-91. These factors include: "(1) the validity and rationality of the connection between a legitimate and neutral government objective and the restriction; (2) whether the prison leaves open 'alternative means of exercising' the restricted right; (3) the restriction's bearing on the guards, other inmates, and the allocation of prison resources; and (4) the existence of alternatives suggesting that the prison exaggerates its concerns." *Munson v. Gaetz*, 673 F.3d 630, 633 (7th Cir. 2012) (citing *Turner*, 482 U.S. at 89-91).

Whether Menard's Publication Review Committee properly rejected "Phat Puffs" and "Phat Puffs Shotz" based on legitimate penological concerns remains to be seen. The Committee's decision to withhold the materials violates the First Amendment, if the reasons for doing so run afoul of the *Turner* reasonableness factors. Plaintiff insists that the Committee's decision was completely arbitrary because it was not based on an updated list of disapproved publications or individualized screening of the materials at issue. (Doc. 7). Although further factual development of this claim is necessary, the Court finds that Count 1 merits further consideration against Defendants New, Doe, and Price, all of whom were personally involved in the denial of Plaintiff's access to the publications.

Plaintiff also seeks to impose liability on Warden Lashbrook based on her supervisory role. (Doc. 7, pp. 3-4). According to the First Amended Complaint, the warden oversees operations at the prison and appoints members of the staff to the Committee. (Doc. 7, pp. 3-4, 16-22). But Plaintiff cannot proceed with a claim against the warden based only on a theory of supervisory liability. The doctrine of *respondeat superior* is not applicable to Section 1983 actions. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). A defendant must be "personally responsible for the deprivation of a constitutional right" in order to be held liable in a civil rights case. *Id.* The allegations suggest no involvement by the warden in the decision to ban this particular publication or to withhold it from Plaintiff. (Doc. 7, pp. 16-22, 26-34). No allegations suggest that the warden was even aware that the Committee rejected Plaintiff's request for "Phat Puffs" and "Phat Puffs Shotz." *Id*.

If the warden was aware of or approved the Committee's system for screening published materials and/or condoned the Committee's conduct, Warden Lashbrook may be liable for a violation of Plaintiff's rights. Where a defendant directs the conduct or knowingly consents to

the conduct that caused a constitutional violation, that defendant has sufficient personal involvement in the violation, even if he or she did not participate directly in the violation. *Chavez v. Ill. State Police*, 251 F.3d 612, 652 (7th Cir. 2001) ("The supervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see."). Absent allegations to this effect in the First Amended Complaint, the individual capacity claim against Warden Lashbrook in Count 1 fails and shall be dismissed without prejudice.

### Identification of Unknown Defendant

Plaintiff shall be allowed to proceed with Count 1 against Defendant John Doe, the unknown member of Menard's Publication Review Committee. This defendant must be identified with particularity, however, before service of the First Amended Complaint can be made on him. Where a prisoner's complaint states specific allegations describing conduct of individual prison staff members sufficient to raise a constitutional claim, but the names of those defendants are not known, the prisoner should have the opportunity to engage in limited discovery to ascertain the identity of those defendants. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009). In this case, Warden Jacqueline Lashbrook (official capacity only) shall be responsible for responding to discovery aimed at identifying John Doe. Guidelines for discovery will be set by the United States Magistrate Judge. Once the name of this unknown defendant is discovered, Plaintiff shall file a motion to substitute the newly identified defendant in place of the generic designations in the case caption and throughout the First Amended Complaint.

### Pending Motion

Plaintiff's Motion for Preliminary Injunction (Doc. 8) shall be **REFERRED** to United States Magistrate Judge Donald G. Wilkerson.

**Disposition**

**IT IS HEREBY ORDERED** that **COUNT 1** survives screening and is subject to further review against Defendants **MR./MS. NEW, MS. PRICE,** and **JOHN DOE**.

**IT IS ORDERED** that **COUNT 1** is **DISMISSED without prejudice** against Defendant **JACQUELINE LASHBROOK** (individual capacity only) because the First Amended Complaint fails to state a claim for relief against this defendant. Defendant Lashbrook shall remain named as a defendant in her official capacity only, however, based on Plaintiff's request for injunctive relief. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011). Warden Lashbrook is responsible for carrying out any injunctive relief that is ordered and for responding to discovery aimed at identifying the unknown defendant.

**IT IS ORDERED** that as to **COUNT 1**, Plaintiff has neither sought nor been granted leave to proceed *in forma pauperis* in this action, and the Court will not automatically appoint the United States Marshal to effect service of process upon Defendants **MR./MS. NEW, MS. PRICE,** and **JOHN DOE** (once identified). If Plaintiff desires to request the appointment of the United States Marshal to serve process on these defendants, Plaintiff shall file a Motion for Service of Process at Government Expense, within 28 days of the date of entry of this order (on or before **April 4, 2018**). The Clerk of Court is **DIRECTED** to mail Plaintiff a blank Motion and a copy of the Court's Pro Se Litigant Guide, containing instructions for filing this type of motion.

If Plaintiff does not timely file a Motion for Service of Process at Government Expense, it shall be Plaintiff's responsibility to have Defendants **MR./MS. NEW, MS. PRICE,** and **JOHN DOE** (once identified) served with a summons and copy of the First Amended Complaint pursuant to Federal Rule of Civil Procedure 4. Plaintiff is advised that only a non-party may serve a summons. *See* FED. R. CIV. P. 4(c)(2).

If Plaintiff requests the appointment of the United States Marshal, the Clerk of Court shall prepare a summons and copies of the First Amended Complaint and this Memorandum and Order for each defendant, and shall forward the same to the United States Marshal for service. If Plaintiff does not file a Motion for Service of Process at Government Expense within 28 days as ordered, the Clerk shall then prepare a summons for each defendant, and shall forward the summonses and sufficient copies of the First Amended Complaint and this Memorandum and Order to Plaintiff so that he may have defendants served.

Plaintiff is **ORDERED** to serve upon defendants or, if an appearance has been entered by counsel, upon that attorney, a copy of every pleading or other document submitted for consideration by this Court. Plaintiff shall include with the original paper to be filed a certificate stating the date that a true and correct copy of the document was mailed to each defendant or defendant's counsel. Any paper received by a district judge or magistrate judge which has not been filed with the Clerk or which fails to include a certificate of service will be disregarded by the Court.

**IT IS FURTHER ORDERED** that, with respect to a defendant who no longer can be found at the work address provided by Plaintiff, if the United States Marshal is appointed to serve process pursuant to a motion by Plaintiff, the employer shall furnish the United States Marshal with the defendant's current work address, or, if not known, the defendant's last-known address. This information shall be used only for effecting service of process. Any documentation of the address shall be retained only by the Marshal. Address information shall not be maintained in the court file or disclosed by the Marshal.

Service cannot be made on Defendant **JOHN DOE (Publication Review Committee Member)** until such time as Plaintiff has identified him by name in a properly filed motion for

substitution of parties.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the First Amended Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Donald G. Wilkerson for further pre-trial proceedings, including a plan for discovery aimed at identifying the unknown defendant ("John Doe") and resolution of Plaintiff's Motion for Preliminary Injunction (Doc. 8).

Further, this entire matter is **REFERRED** to United States Magistrate Judge Wilkerson for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  March 7, 2018**

*Nancy J. Rosenstengel*

**NANCY J. ROSENSTENGEL**
**United States District Judge**