# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHARLES E. THORNTON, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 3: 17-CV-1296-NJR-MAB |
| JACQUELINE LASHBROOK, MISTY NEW, REGINA PRICE, CYNTHIA GIMBER, and PAMELA SCOTT, | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

This matter is before the Court on the motion for summary judgment on the issue of exhaustion of administrative remedies filed by Defendants Regina Price and Cynthia Gimber (Doc. 72). For the reasons stated below, the motion is granted in part and denied in part.

### BACKGROUND

Plaintiff Charles Thornton is an inmate in the Illinois Department of Corrections. He brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 claiming prison officials at Menard Correctional Center ("Menard") violated his constitutional rights when they wrongfully denied him access to publications that he ordered. At the time the motion for summary judgment was filed in March 2019, Thornton was proceeding on two claims against Defendants Misti New, Cynthia Gimber, and Regina Price for

violating his First Amendment rights when they erroneously rejected an issue of "Phat Puffs" magazine and sets of "Phat Puffs Shotz" photographs in June 2017 (Count 1) and erroneously rejected another set of "Phat Puffs Shotz" photographs in February 2018 (Count 2) (Doc. 10; Doc. 50).[1]

On March 20, 2019, Defendants Gimber and Price filed a motion for summary judgment, arguing that Thornton failed to exhaust his administrative remedies as to them prior to filing suit (Doc. 72).[2] More specifically, Defendants Gimber and Price argue that, in the grievances Thornton submitted following the rejection of the Phat Puffs publications in June 2017 (which is the basis of Count 1), he did not name them, reference them, or allege that they had any role in denying the publications (Doc. 73). Notably, Defendants Gimber and Price make no arguments and present no evidence regarding grievances filed in the wake of Phat Puffs publication that went unaccounted for in February 2018 (which is the basis of Count 2) (*see* Doc. 73). In other words, the motion for summary judgment pertains only to Thornton's failure to exhaust as to Defendants Gimber and Price *as it relates to Count 1*. Thornton filed a response in opposition to the motion for summary judgment on April 3, 2019 (Doc. 77). Defendants Gimber and Price did not file a reply.

In May 2019, before the motion for summary judgment was ruled on, Thornton moved to amend his complaint once again (Doc. 87). Thornton was permitted to add

---

[1] Jacqueline Lashbrook, the warden at Menard, was named as a defendant in her official capacity only based on Thornton's request for injunctive relief (Docs. 10, 50).

[2] Defendant New did not move for summary judgment on the issue of exhaustion.

Pamela Scott as a Defendant to Count 2 (Docs. 119, 122). Thornton also was permitted to add a claim for retaliation against Counselor Price as an alternative to Count 2 (Count 3).

As of the date of this Order, Thornton is proceeding on the following claims against the following Defendants:

> **Count 1 -** First Amendment claim against Defendants Misti New, Cynthia Gimber, and Regina Price for denying Thornton's request for a copy of Issue No. 10 of "Phat Puffs" (Spring 2017) and "Phat Puffs Shotz" without a legitimate penological reason.
>
> **Count 2 -** First Amendment claim against Defendants New, Gimber, Price, and Pamela Scott for denying Thornton's "set of phat puffs no nudity shotz" requested in February 2018 without a legitimate penological reason.
>
> **Count 3 –** First Amendment retaliation claim against Defendant Price for ensuring Thornton did not receive the "set of phat puffs no nudity shotz" requested in February 2018 in retaliation for Thornton filing grievances and a lawsuit against Price.

After Defendant Pamela Scott was added as a defendant, she did not seek leave to file a motion for summary judgment on the issue of exhaustion. Additionally, Counselor Price did not seek to amend her motion to add an argument related to Count 3, which was the new claim for retaliation. Accordingly, the only issue before the Court is whether Thornton exhausted his administrative remedies as to Defendants Cynthia Gimber and Regina Price as it relates to Count 1.

Because the parties' filings do not implicate a genuine issue of material fact, no evidentiary hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008) was necessary, and Defendants' motion for summary judgment on the issue of exhaustion is ripe for disposition.

## FACTUAL BACKGROUND

Defendant Regina Price is a correctional counselor at Menard (Doc. 73-2). She does not have a position on the Publications Review Committee, and she does not have a role in approving or disapproving publications sent to inmates (*Id.*).

Defendant Cynthia Gimber is the mailroom supervisor at Menard, and by virtue of her position, she is a member of the Publication Review Committee (Doc. 73-4).

Attached to the motion for summary judgment were two grievances relevant to Count 1.[3] The first grievance is dated June 30, 2017 (Doc. 73-1, pp. 6–9). In this grievance, Thornton indicated that he received a document titled "Publication Review Determination and Course of Action" advising him that the Phat Puff magazine and set of Phat Puff photos he ordered were disapproved because they contained obscene and sexually explicit material. Thornton disputed that there was anything obscene or sexually explicit in the publications. He believed the publications were rejected in retaliation for previous grievances and lawsuits that he filed. He asked to receive the publications with the offending pages removed or to be reimbursed for the money he spent on the publications. Counselor Price responded to the grievance telling Thornton, "[a]ccording to the Publication Review staff, this issue is on the disapproved list and is not allowed." Grievance Officer Kelly Pierce then recommended denying the grievance, indicating that the publication was on the disapproved list, which Thornton could access in the law library. The warden concurred with the recommendation and denied the grievance on

---

[3] A third grievance dated June 22, 2017, pertains to an issue of Cosign Pro magazine that Thornton ordered but never received (Doc. 73-1, pp. 10–12). This magazine is not at issue in this lawsuit.

July 21, 2017. Thornton appealed to the Administrative Review Board ("ARB"), which denied the grievance on September 26, 2017, after determining the issue was appropriately handled by the officials at Menard.

The second grievance is dated July 23, 2017 (Doc. 73-1, pp. 3–5). In this grievance, Thornton indicates that on July 12th he asked the counselor in the West cell house for a copy of the list of non-approved publications and was told he could review it in the library. He submitted another request for the list on July 15th to the counselor in the West cell house and to clinical services. This request apparently went unanswered because he filed the grievance on July 23rd asking for a copy of the list. On July 25th, counselor Price received the grievance. She responded on August 22nd, "Policy is being followed. Offender may review the listing by submitting a request slip to the library." Grievance officer Kelly Pierce recommended denying the grievance, indicating that "[t]he counselor addressed the grievance appropriately. The law library has a listing to reference." The warden concurred with the recommendation and denied the grievance on August 31st. Thornton appealed to the ARB, which denied the grievance on September 28, 2017, after determining the issue was appropriately handled by the officials at Menard.

### LEGAL STANDARD

Summary judgment is proper if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once a properly supported motion for summary judgment is made, the adverse party must set forth specific facts

showing there is a genuine issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). In determining a summary judgment motion, the Court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

The Prison Litigation Reform Act provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011)). The purpose of the exhaustion requirement is to "alert prison officials to perceived problems and to enable them to take corrective action without first incurring the hassle and expense of litigation." *Cannon v. Washington*, 418 F.3d 714, 719 (7th Cir. 2005) (per curiam) (citations omitted). *See also Maddox v. Love*, 655 F.3d 709, 721 (7th Cir. 2011) (quoting *Jones v. Bock*, 549 U.S. 199, 219 (2007)). In order for a prisoner to properly exhaust his or her administrative remedies, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002); *see also Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Exhaustion is an affirmative defense, which the defendants bear the burden of proving. *Pavey*, 663 F.3d at 903 (citations omitted).

As an inmate in the IDOC, Thornton was required to follow the three-step grievance process outlined in the Illinois Administrative Code to exhaust his claims.

20 ILL. ADMIN. CODE § 504.800, *et seq.* (2017). The regulations first require an inmate to file his or her grievance with his or her counselor. *Id.* at § 504.810(a).[4] If the counselor is unable to resolve the grievance, it is sent to the grievance officer, who reports his or her findings and recommendations in writing to the Chief Administrative Officer (the warden). *Id.* at § 504.830(e). The warden then provides the inmate with a written decision on the grievance. *Id.* If the inmate is not satisfied with the warden's decision, he or must appeal to the Director of the IDOC by sending the grievance to the ARB for a final determination. *Id.* at § 504.850(a).

The regulations also require, in pertinent part, that the grievance "contain factual details regarding each aspect of the offender's complaint, including what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint." *Id.* at § 504.810(c). If the offender does not know the names of the individuals involved, he must instead include as much descriptive information about the individual as possible. *Id.*

## DISCUSSION

Defendants Gimber and Price argue that because Thornton's grievances do not name them, reference them, or describe their role in denying his publications, the grievances failed to alert prison officials to any issues with them, and therefore Thornton failed to exhaust his remedies as to them (Doc. 73). The Court agrees as to Defendant Price, but not Defendant Gimber.

---

[4] There are exceptions to this rule, none of which apply here. 20 ILL. ADMIN. CODE § 504.810(a), 504.870 (2017).

Thornton complained in the first grievance dated June 30, 2017, about an administrative decision in his grievance: the rejection of publications that he purchased. Given the nature of the decision, "it belies reason" to suggest that prisoner administrators at Menard were unaware of who was responsible for that decision. *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011) (concluding that prison administrators obviously knew who was responsible for indefinitely cancelling African Hebrew Israelite religious services). It was, of course, the Publications Review Staff who was responsible for reviewing incoming publications and determining whether they were permitted at the institution (*see* Doc. 73-4). In fact, Thornton's counselor and the grievance officer both consulted with the Publications Review Staff in order to respond to his grievance. Therefore, even though Thornton did not specifically name or describe each member of the Publications Review Staff, his grievance still served its function by providing prison officials a fair opportunity to address his complaint. Given that Cynthia Gimber was a member of the Publications Review Staff, the June 30th grievance is sufficient to cover her.

Furthermore, Thornton's June 30th grievance was never rejected as procedurally deficient and was decided on the merits at every stage of the grievance process. "A procedural shortcoming," like failing to specifically name each person who is the subject of the grievance, "amounts to a failure to exhaust only if prison administrators explicitly relied on that shortcoming." *Maddox v. Love*, 655 F.3d 709, 721 (7th Cir. 2011) (citation omitted) (rejecting argument that the plaintiff failed to exhaust his administrative remedies because he did not name or describe the defendants in his grievance where grievance was rejected on the merits at every stage of review without any indication it

was procedurally deficient).

For these reasons, Thornton's failure to name Defendant Cynthia Gimber in his June 30th grievance is not fatal to his claim against her in Count 1.[5] He is deemed to have exhausted his administrative remedies as to Defendant Gimber with respect to Count 1.

As for Defendant Regina Price, she was not a member of the Publications Review Staff. She was a correctional counselor who had no role in approving or disapproving publications sent to inmates. There is nothing in the June 30th grievance that suggests Thornton was complaining his counselor played a role in thwarting his access to the Phat Puffs publications by improperly handling his grievance and turning a blind eye to the wrongful rejection of the publications (*see* Doc. 73-1, pp. 6–9). Consequently, the June 30th grievance cannot be used to exhaust as to Defendant Price. *See Roberts v. Neal*, 745 F.3d 232, 234 (7th Cir. 2014) (explaining "fatal defect" in grievance was it "neither mentioned (defendant) by name nor provided information that should have identified him to the grievance officer."); *Ambrose v. Godinez*, 510 F. App'x 470, 472 (7th Cir. 2013) (affirming the dismissal of prison officials where the plaintiff's grievance failed to mention the officials by name or otherwise implicate them in the alleged constitutional violation).

---

[5] Defendant Gimber appears to make a second argument as to why she is entitled to summary judgment. Specifically, she provided a sworn affidavit in which she states that her role in reviewing publications was "limited to sending any concerning material to the publications review chairperson for further review. I do not make specific recommendations regarding whether a publication should ultimately be permitted at the institution" (Doc. 73-4). Given that she played no part in the decision to reject the Phat Puffs publications, she would presumably be entitled to summary judgment. In the Court's view, however, this issue goes more to the merits of Thornton's claim than to the question of whether Thornton exhausted his administrative remedies prior to filing suit. Thornton should be given the opportunity to question Defendant Gimber and develop other evidence that might bear on this contention. For these reasons, the Court will defer consideration of Defendant Gimber's argument until after merits-based discovery is conducted, and Defendants file their motions for summary judgment.

The second grievance dated July 23, 2017, is also insufficient to exhaust as to Defendant Price. In this grievance, Thornton indicates that he asked the "west cell house counselor" for the list of disapproved publications but the counselor referred him to the law library rather than giving him a copy of the list (Doc. 73-1, pp. 3–5). The counselor then apparently failed to respond to Thornton's second request (*see id.*). This grievance cannot serve to exhaust as to Regina Price because even if prison administrators knew that she was the "west cell house counselor," her purported failure to provide Thornton with a copy of the disapproved publication list is not the basis for Thornton's claim against her in Count 1. Instead, the basis for his claim is that Price turned a blind eye to the wrongful rejection of the Phat Puffs publications and took no action to help him get them back. But nothing in the July 23rd grievance suggests Thornton is complaining about his counselor's role in thwarting his access to the publications. Consequently, this grievance cannot serve to exhaust Thornton's claim against Defendant Price in Count 1.

For these reasons, Thornton failed to exhaust his administrative remedies as to Regina Price and his claim in Count 1, and she is entitled to summary judgment.

## Conclusion

The motion for summary judgment on the issue of exhaustion filed by Defendants Cynthia Gimber and Regina Price (Doc. 72) is **GRANTED in PART and DENIED in part.** It is denied as to Cynthia Gimber and she remains a Defendant to Count 1. It is granted as to Regina Price and she is **DISMISSED** without prejudice as a Defendant to Count 1.

This matter shall proceed on the following claims against the following Defendants:

**Count 1 -** First Amendment claim against Defendants Misti New and Cynthia Gimber for denying Thornton's request for a copy of Issue No. 10 of "Phat Puffs" (Spring 2017) and "Phat Puffs Shotz" without a legitimate penological reason.

**Count 2 -** First Amendment claim against Defendants New, Gimber, Regina Price, and Pamela Scott for denying Thornton's "set of phat puffs no nudity shotz" requested in February 2018 without a legitimate penological reason

**Count 3 –** First Amendment retaliation claim against Defendant Price for ensuring Thornton did not receive the "set of phat puffs no nudity shotz" requested in February 2018 in retaliation for Thornton filing grievances and a lawsuit against Price.

**IT IS SO ORDERED.**

**DATED:** December 9, 2019

*[signature: Nancy J. Rosenstengel]*

**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**