IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **CHARLES E THORNTON,** | |
| Plaintiff, | |
| v. | Case No. 17-CV-01296-SPM |
| **JACQUELINE LASHBROOK,** *et al.*, | |
| Defendants. | |

# MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

This matter comes before the Court for consideration of a Motion for Summary Judgment filed by Defendants Cynthia Gimber, Jacqueline Lashbrook, Misty New, Regina Price, and Pamela Scott (Doc. 204). Defendants seeks dismissal of this action on the merits (*Id.*). Alternatively, Defendants seek dismissal of this action under the doctrine of qualified immunity and dismissal of the request for injunctive relief under the doctrine of sovereign immunity (*Id.*). For the reasons set forth below, the Court grants the motion for summary judgment.

### RELEVANT FACTS AND ALLEGATIONS

Plaintiff Charles Thornton is an inmate in the Illinois Department of Corrections (Doc. 122). Thornton has filed this action *pro se* pursuant to 42 U.S.C. §1983, claiming prison officials at Menard Correctional Center violated his constitutional rights when they wrongfully denied him access to publications he ordered (*Id.*) Thornton has three claims against various IDOC Correctional Officers (*Id.*) First, Thornton claims that IDOC Correctional Officers Misty New and Cynthia

Gimber violated his First Amendment rights by denying his request for an issue of a magazine titled "Phat Puffs" and sets of "Phat Puffs Shotz" photographs in June 2017 without a legitimate penological reason (Doc. 122, 158). Second, Thornton claims that IDOC Correctional Officers New, Gimber, Regina Price, and Pamela Scott violated his First Amendment rights by denying his request for another set of "Phat Puffs Shotz" photographs in February 2018 without a legitimate penological reason (Doc. 122). Third, Thornton claims that Price ensured he did not receive his set of "Phat Puffs Shotz" photographs in February 2018 in retaliation for filing grievances and a lawsuit against Price (*Id.*)

Defendants moved for summary judgment (Doc. 204). Defendants set forth the following undisputed facts[1]: New was the Publications Review Chairperson in June and July 2017 at Menard (Doc. 205 ¶ 2). By February 2018, New was the Corrections Laundry Manager (*Id.*) During her time as Publications Review Chairperson, New received publications from the mailroom, which someone else determined needed further review (*Id.*, at ¶ 3). New did not review every publication that entered the institution (*Id.*, at ¶ 4). On June 30, 2017, New, acting in that role, recommended denial of Thornton's request for the issue of "Phat Puffs" because the magazine was listed on the Disapproved Publication List, contained material determined to be obscene per 720 ILCS 5/11-20(b), and included sexually explicit material that by its nature or content possessed a threat to security, good order, or discipline or it facilitated criminal activity (*Id.*, at ¶ 7). Defendant New stated that other magazines

---

[1] These undisputed facts were reached by comparing the listed undisputed facts between Defendant's memorandum in support of Summary Judgment, Plaintiff's response, and Defendant's reply.

with sexual content were conditionally approved per the Illinois Department of Corrections Publications listing, including a different issue of "Phat Puffs" (Doc. 227, at ¶¶ 20-27). Thornton does not have any documentation to indicate that New ever reviewed and denied the photographs from 2017 (Doc. 205, ¶ 15).

From October 2015 to October 2019 Defendant Gimber was the Mailroom supervisor at Menard (*Id.*, at ¶ 17). Gimber assisted various members assigned to the mailroom in sorting the incoming mail (*Id.*, at ¶ 19). If a publication came in, it was set aside for further review by the publications officer (*Id.*). Gimber does not recall personally sorting any of the Thornton's mail (*Id.*, at ¶ 20). Thornton does not have any evidence to support his belief that Gimber had a role in denying him the magazine in 2017 or photos from 2017 and 2018 (*Id.*, at ¶ 23). Thornton admits that Gimber may not have been able to review every item of mail that came to Menard (*Id.*, at ¶ 24).

Defendant Price was a Correctional Counselor at Menard from 2004 through November 2020 (*Id.*, at ¶ 25). As a Correctional Counselor, Price did not have a role in recommending or determining whether an inmate may receive certain publications or photographs in the mail (*Id.*, at ¶ 26). Price was Thornton's Correctional Counselor during part of his time at Menard (*Id.*, at ¶ 27). One of Price's responsibilities was to review Thornton's grievances as part of the first step in the grievance process (*Id.*) Thornton's Cumulative Counseling Summary shows Price met with Thornton in-person multiple times between 2017 and 2018 and his grievance records show she also responded to multiple grievances within that time (*Id.*, at ¶ 30).

Defendant Scott was the Publications Review Chairperson at Menard in

February 2018 (*Id.*, at ¶ 33). As the Publications Review Chairperson, she received publications from the mailroom, which someone in the mailroom determined needed further review (*Id.*, at ¶ 34). The mailroom staff processed inmate mail, including publications, and Scott did not review every publication which entered the institution (*Id.*, at ¶ 35). Scott did not normally review photos (*Id.*, at ¶ 37). Scott did not recall reviewing any photos mailed to Thornton in February 2018 (*Id.*) Scott was unable to find any documentation indicating she had reviewed any photographs in February 2018 (*Id.*) Thornton has indicated that Scott was included in the complaint because she might have reviewed the photos in her role as Publications Review Chairperson (*Id.*, at ¶ 38). Thornton admitted that he does not have any documentation to show Scott reviewed the photos in question or that she played any role in prohibiting him from receiving them (*Id.*)

There is no record of a set of "Phat Puffs Shotz" photographs being received by the mailroom, being sent to Thornton, or being returned to a publisher (*Id.*, at ¶ 22). Thornton acknowledged that there is no record of the 2018 photographs being received by the mailroom (*Id.*, at ¶ 23).

## LEGAL STANDARD

Summary judgment is "the put up or shut up moment in a lawsuit" where a party lays its proverbial cards on the table, showing what evidence it possesses to convince a trier of fact to agree with its version of events. *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (other citations omitted)). Summary judgment is only appropriate if the movant "shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law." *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014) (*quoting* FED. R. CIV. P. 56(a)). That "burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere conclusory allegations and offer specific facts showing that there is a genuine issue of fact for trial. FED. R. CIV. P. 56(e); *see Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *see also Celotex*, 477 U.S. at 232-24.

In determining the existence of a genuine dispute of material fact, the Court construes all facts in the light most favorable to the nonmoving party and draws all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Spath v. Hayes Wheels Intern.-Indiana, Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). While the Court must view the evidence and draw all reasonable inferences in favor of the opposing party, "[i]nferences and opinions must be grounded on more than flights of fancy, speculations, hunches, intuitions, or rumors[.]" *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *Rand v. CF Industries, Inc.*, 42 F.3d 1139, 1146 (7th Cir. 1994); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex,* 477 U.S. at 323. Furthermore, when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable

jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Henning v. O'Leary,* 477 F.3d 492, 496 (7th Cir. 2007).

## DISCUSSION

This case involves three First Amendment claims. The first claim alleges that New and Gimber violated Thornton's First Amendment rights by denying him an issue of the magazine "Phat Puffs" and accompanying photographs "Phat Puffs Shotz" in June 2017. In a § 1983 claim, liability depends on each defendant's knowledge and actions, not on the knowledge or actions of persons they supervise. *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009). A supervisor cannot be held liable in a § 1983 action unless the supervisor was personally involved in the wrongful conduct such that he or she caused or participated in the alleged constitutional violations. *Boyce v. Moore*, 314, F.3d 884, 888 (7th Cir. 2002). While Gimber was the mailroom supervisor when Thornton was denied the "Phat Puffs" materials, she does not recall personally sorting any of Thornton's mail, nor is there any indication she was involved in the review process of the magazine. Furthermore, Thornton admits that Gimber may not have been able to review every piece of mail that came into Menard. Therefore, Gimber lacked sufficient personal involvement to be liable under a § 1983 action.

Regarding Thornton's claim against New, the Supreme Court has held that when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests. *Turner v. Safley*, 482 U.S. 78, 89 (1987). To determine if the regulation is reasonably related to legitimate penological interests four factors must be examined: (1) whether a valid,

rational connection exists between the prison regulation and the legitimate governmental interest put forward to justify it exists, (2) whether there are alternative methods of exercising the right that remain open to the inmate, (3) the impact of accommodating the right on staff, other inmates, and on the allocation of prison resources generally, and (4) the existence of alternatives suggesting that the prison exaggerates its concerns. *Id.* at 89-91.

The Seventh Circuit has noted that "Prisons have great latitude in limiting the reading material of prisoners." *Mays v. Springborn*, 575 F.3d 643, 649 (7th Cir. 2009). In assessing the reasonableness of a prison restriction, courts "must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Singer v. Raemisch*, 593 F.3d 529, 534 (7th Cir. 2010) (citing *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003)). The inmate challenging the reasonableness of a prison restriction ultimately bears the burden of disproving its validity. *Singer*, 593 F.3d at 534 (citing *Overton*, 539 U.S. 132).

Considering the four elements of *Turner*, New's recommendation to deny Thornton the issue of "Phat Puffs" was for legitimate penological reasons. Defendants argue that there is a rational connection between the regulation and a legitimate government interest. New indicated that the publication was denied because the magazine was listed on the Disapproved Publication List, contained material determined to be obscene per 720 ILCS 5/11-20(b), and included sexually explicit material that by its nature or content possessed a threat to security, good order, or

discipline or it facilitated criminal activity. Thornton appears to be arguing that the Defendants failed to prove that "Phat Puffs" was on the disapproved publications list and that because "Phat Puffs" did not contain nudity, prison officials were not rational in their belief that the materials were obscene, sexually explicit, and posed a threat to institutional safety. But Thornton admitted that "Phat Puffs" was on the disapproved publications list. Furthermore, a publication can be deemed obscene or sexually explicit, and thus a threat to institutional security, even if it does not contain full nudity.

Regarding the other *Turner* factors, Defendants also argue that there are alternative methods of exercising the right that remained open to Thornton, the impact of accommodating the right on staff and other inmates was significant, and the ready alternatives did not suggest that they exaggerated concerns. Thornton makes no argument or sets forth any evidence to show these factors likely weigh in his favor. Consequently, Thornton's first claim fails because he did not offer specific facts showing that there is a genuine issue of fact for trial.[2]

In the second claim, Thornton alleges that New, Gimber, Price, and Scott were all responsible for Thornton not receiving another set of "Phat Puffs Shotz" photographs that he ordered in February of 2018. In Thornton's Third claim he alleges that Price ensured that Thornton did not receive the photos in retaliation for Thornton filing suit against her. For summary judgment, "[i]nferences and opinions

---

[2] Additionally, Thornton stated he believed that "Phat Puffs Shotz" came with the issue of "Phat Puffs," but he has provided no actual evidence that New ever saw the photographs he believes he should have received, and no reasonable juror could draw this inference.

must be grounded on more than flights of fancy, speculations, hunches, intuitions, or rumors[.]" *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex,* 477 U.S. at 323. In this case no defendant has recalled seeing the photographs in question, there is no documentation that the photos ever entered the facility, and Thornton has failed to provide any proof, outside his own belief, that they ever arrived at the prison. Furthermore, Thornton makes no argument or sets forth any evidence to show that Price retaliated against him. This complete failure of proof shows, again, that there is no genuine issue of fact for trial. Therefore, Thornton's second and third claims fail.

Even if the Court did not find for Defendants on summary judgment on the merits, Thornton failed to challenge Defendants' argument that they are immune from suit under the doctrine of qualified immunity. He also did not address Defendants' argument that the doctrine of sovereign immunity barred Thornton's request for injunctive relief. "A party seeking to defeat a motion for summary judgment is required to 'wheel out all its artillery to defeat it'" *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996) (citations omitted). "Failure to respond to an argument results in waiver" *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010). As a result, Defendants are immune from suit and Thornton's request for injunctive relief is barred.

## Conclusion

Accordingly, the Court **GRANTS** the Motion for Summary Judgment (Doc. 204) and Plaintiff Charles Thornton's claim against Defendants Cynthia Gimber,

Jacqueline Lashbrook, Misty New, Regina Price, and Pamela Scott are **DISMISSED with prejudice**. The Clerk of Court is **DIRECTED** to close this case and enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED:** August 17, 2021

s/ *Stephen P. McGlynn*
**STEPHEN P. McGLYNN**
**U.S. District Judge**
